IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DALE ANDREW ROUNDSTONE,<br><br>Defendant. | Case No. CR-08-66-BLG-TFH<br><br>MEMORANDUM OPINION DENYING AMENDED MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE |

Pending before the Court is defendant Dale Andrew Roundstone's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Am. Mot.") [ECF No. 154].[1] Defendant seeks the reversal of his conviction for kidnapping based on ineffective assistance of counsel where, he contends, counsel failed to investigate or question certain witnesses prior to and during his trial. Defendant requests an evidentiary hearing.

Upon careful consideration of defendant's motion, the government's response, defendant's reply, and the entire record herein,[2] the Court will deny the motion without an evidentiary hearing and will deny a certificate of appealability ("COA") for the reasons provided below.

---

[1] Defendant is currently serving a sentence of 151 months of imprisonment followed by five years of supervised release. Judgment 1-3, ECF No. 114. Defendant's release date is April 10, 2019. Am. Mot. 2.

[2] The record in this case includes transcripts from a three-day jury trial. Although the transcripts were filed in three separate volumes, one for each day (ECF Nos. 130, 131, 132), they are continuously paginated. Therefore, for simplicity's sake, the transcripts will be cited collectively as a single transcript ("Tr.").

# I. BACKGROUND

According to witnesses and video surveillance footage, at approximately 4:30 p.m. on a Friday afternoon in March 2008, a vehicle screeched up to the front of the Little Big Horn Casino. Tr. at 307, 315-24, 338-41. The young woman behind the wheel, B.P.T., was bruised and beaten. Tr. at 309-11, 327. She jumped out of the vehicle and ran toward casino security officers, crying and screaming, "Help me. He's trying to kill me." Tr. at 307, 316. Within seconds, defendant pulled up in another vehicle and jumped out in a rage, yelling at B.P.T. to "[g]et the [f***] out here" and repeating the phrase, "that [f***ing] [b****] is trying to snitch." Tr. at 308, 317, 340. And so began the investigation into defendant's alleged kidnapping and assault of B.P.T.

On December 17, 2008, a federal grand jury returned a superseding indictment charging defendant with aggravated sexual assault, in violation of 18 U.S.C. § 2241(a); kidnapping, in violation of 18 U.S.C. § 1201(a)(2); and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6). Superseding Indictment 1-3 [ECF No. 28]. The Court held a three-day jury trial from September 21 to September 23, 2009.

At the conclusion of the trial, the jury rendered a verdict finding defendant guilty of kidnapping and assault resulting in serious bodily injury, and not guilty of sexual assault. The Court sentenced defendant to 151 months of imprisonment followed by five years of supervised release.[3] Defendant appealed his kidnapping conviction, arguing that the evidence was insufficient to prove that he held the alleged victim, B.P.T., against her will. The U.S. Court of Appeals for the Ninth Circuit affirmed:

---

[3] *See supra* note 1.

> The alleged victim testified that [defendant] pulled her into his truck by her hair and that she was unable to get away from him or get help from anyone all afternoon because "he was with [her] the whole time and made sure [she] wouldn't leave." Another witness for the prosecution testified that she saw [defendant] pull the alleged victim into his vehicle and heard her scream. The alleged victim further testified that [defendant] beat her for over two hours, denied her repeated requests to let her return to her sister's home, and kept his eye on her when they were in public together. She did not feel safe attempting to escape until she was able to pull the vehicle she was driving into a casino parking lot and run inside, screaming for help. Several other prosecution witnesses testified that they saw the alleged victim run into the casino that afternoon, screaming that [defendant] was trying to kill her. She was pursued by [defendant], who "was yelling at her, and . . . was in a rage." This evidence was sufficient to demonstrate that [defendant] unlawfully seized and held the alleged victim against her will.

*United States v. Roundstone*, 468 F. App'x 707, 708-09 (9th Cir. 2012), *cert. denied*, 132 S. Ct. 2790 (2012).

Defendant now collaterally attacks his kidnapping conviction. He initially filed, *pro se*, a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 140], in which he also requested that counsel be appointed. The Court appointed counsel for the purposes of obtaining and reviewing any case materials retained by prior defense counsel and determining, in consultation with defendant, whether the motion merits amendment to allege facts supporting the defendant's ineffective assistance claim. Defendant then filed, through counsel, his Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 154]. The government has filed a response [ECF No. 158] and defendant a reply [ECF No. 160].

## II. DISCUSSION

Defendant makes two arguments in support of his ineffective assistance claim: First, he contends that counsel failed to investigate or interview two individuals regarding a "long-standing rumor" that one of the government's witnesses, Tanya Russette, was paid $150 by B.P.T. "to say [B.P.T.] was forced into [defendant's] car." Am. Mot. 12-16. Defendant continues, counsel's failure to properly investigate the bribery allegation or interview the two individuals regarding the bribery allegation amounted to ineffective assistance. *Id.* at 16. "If [Ms. Russette] had been properly impeached, the jury may not have believed her testimony that B.P.T. had been forcefully abducted and may very well have acquitted [defendant] of the kidnapping charge." Reply 10.

Second, defendant contends that trial counsel failed to investigate or question a defense witness, Arsenia Morrison, about allegedly having been assaulted by B.P.T., who warned Ms. Morrison not to testify about the alleged bribe, and by B.P.T.'s sister, who was angered that Ms. Morrison was planning to testify on defendant's behalf. Am. Mot. 16-17. Counsel's failure to question Ms. Morrison about this subject amounted to inneffective assistance because, defendant believes, this information was "highly relevant to the jury's credibility assessment." *Id.* at 17. "If the jury had been informed that [B.P.T.'s sister] assaulted and threatened [Ms.] Morrison, it may very well have lost faith in [the] prosecution's witnesses." Reply 10.

In response, the government argues that counsel's performance was not deficient and, even if it was, defendant was not prejudiced in light of the overwhelming evidence against him. *See* Response 1-15.

## A. Claim of Ineffective Assistance of Counsel

"The clearly established federal law for ineffective assistance of counsel claims, as determined by the Supreme Court, is *Strickland v. Washington,* 466 U.S. 668 (1984), and its progeny." *Andrews v. Davis,* 798 F.3d 759, 774 (9th Cir. 2015). "A petitioner claiming ineffective assistance of counsel must prove: (1) that 'counsel's performance was deficient,' and (2) that 'the deficient performance prejudiced the defense.'" *Id.* (quoting *Strickland,* 466 U.S. at 687). However, the "'court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' Rather, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.* (quoting *Strickland,* 466 U.S. at 697). "In short, a court need not address the two *Strickland* prongs in order; if ruling on the prejudice prong more efficiently resolves the case, reaching the deficiency prong is unnecessary." *Id.*

Here, the Court assumes without deciding that counsel's performance was deficient, and proceeds to the prejudice inquiry. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011). Accordingly, counsel's failure to call a relevant witness or introduce relevant evidence will not be prejudicial under *Strickland* where the government's evidence against the defendant is "overwhelming." *See, e.g., United States v. Harden,* 846 F.2d 1229,

1231-32 (9th Cir. 1988) (concluding that not having certain information in evidence, and not having a certain witness testify, did not establish prejudice under *Strickland* where the evidence against defendant was overwhelming).

Neither of defendant's above-noted arguments, even if assumed true, establish a conceivable, much less substantial, likelihood of a different result on the kidnapping conviction. First, even if defendant had been able to impeach Ms. Russette's or B.P.T.'s testimony that defendant forced B.P.T. into his vehicle, "[t]he fact that one originally accompanies another without being forced does not prevent the occurrence of a kidnapping where force is later used to seize or confine the victim." *United States v. Redmond*, 803 F.2d 438, 439 (9th Cir. 1986). The evidence that defendant used force to seize or confine B.P.T. was overwhelming. As the Court of Appeals noted in affirming the kidnapping conviction,

> [B.P.T.] testified that she was *unable to get away from [defendant] or get help from anyone all afternoon because "he was with [her] the whole time and made sure [she] wouldn't leave."* . . . *[Defendant] beat her for over two hours, denied her repeated requests to let her return to her sister's home, and kept his eye on her when they were in public together. She did not feel safe attempting to escape until she was able to pull the vehicle she was driving into a casino parking lot and run inside, screaming for help.* Several other prosecution witnesses testified that they saw the alleged victim run into the casino that afternoon, screaming that [defendant] was trying to kill her. She was pursued by [defendant], who "was yelling at her, and . . . was in a rage."

*Roundstone*, 468 F. App'x at 708 (emphasis added). Indeed, defendant admitted at trial that he used force against B.P.T. (including by slapping her, pushing her down on a couch, hitting her two or three times in the stomach, and hitting her in the back with a vaccum accessory, on her leg and arm with a clothes hanger, and with a belt). Tr. at 622, 626-29. An emergency room

physician testified that during his examination of B.P.T. on the date of the incident her injuries included facial swelling and bruising; red marks across the front and sides of her neck; abrasions, redness, and bruising along her chest and upper back; and deep contusions and bruises along her sides, buttocks, and thighs. Tr. at 452-53. Additionally, the government introduced photographic evidence of B.P.T.'s injuries, which injuries defendant admitted causing. Tr. at 664-65. Finally, video surveillance footage and testimony from casino employees depicted B.P.T.'s escape (and defendant's enraged pursuit of her) into the casino. Tr. at 306-24, 338-41.

In short, inasmuch as counsel's assumed deficient performance—specifically, failing to further investigate the bribery allegation, or to question Ms. Morrison about being assaulted by B.P.T.—prevented defendant from impeaching Ms. Russette's and B.P.T.'s testimony that defendant forced B.P.T. into his vehicle, defendant was not prejudiced in light of the overwhelming evidence against him. *See Harden, supra.*

Regarding counsel's failure to pursue the allegation that B.P.T.'s sister assaulted Ms. Morrison in anger over Ms. Morrison's plan to testify on defendant's behalf, defendant fails to demonstrate—and the Court cannot discern—how defendant was prejudiced. Ms. Morrison, evidently undaunted by the sister's assault, proceeded to testify on defendant's behalf at trial. *See* Tr. at 577-83. Defendant baldly contends that "[i]f the jury had been informed that [B.P.T.'s sister] assaulted and threatened . . . [Ms.] Morrison, it may very well have lost faith in [the] prosecution's witnesses." Reply 10. Without further explanation and given the overwhelming evidence against defendant, however, the Court is unable to fathom a scenario where the jury would have "lost faith in [the] prosecution's witnesses"—including casino employees, law enforcement officers, and medical personnel—if it had learned that the victim's sister (who was


not a witness at trial) unsuccessfully attempted to prevent Ms. Morrison from testifying on defendant's behalf. To the extent defendant implies that this information would have affected the jury's credibility determination relating to B.P.T., his argument is unpersuasive. B.P.T.'s testimony regarding defendant's use of force to seize or confine her was substantially corroborated by the overwhelming evidence against defendant, which included not only defendant's admissions to using force against B.P.T., but also video surveillance footage, photographs, and tesitimony from casino employees and medical personnel.

In sum, defendant fails to establish prejudice under the second prong of *Strickland* and, therefore, the Court must deny his ineffective assistance claim. *See Strickland*, 466 U.S. at 687.

### B. Request for Evidentiary Hearing

Turning to defendant's request for an evidentiary hearing, "[t]he district court must grant a [defendant's] motion to hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (quoting 28 U.S.C. § 2255). "'To earn the right to a hearing, therefore, [the defendant] [is] required to allege specific facts which, if true, would entitle him to relief.'" *Id.* (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996), *cert. denied*, 520 U.S. 1269 (1997)). In the instant case, as noted above, even accepting the facts alleged by defendant as true and assuming that counsel's performance was deficient under the first *Strickland* prong, the Court nevertheless concludes that defendant cannot demonstrate prejudice under the second *Strickland* prong in light of the overwhelming evidence against defendant. In sum, "the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief." 28 U.S.C. § 2255. Accordingly, the Court will deny defendant's request for an evidentiary hearing. *See Ortiz, supra.*

## C. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, in relevant part, that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, "[t]he [applicant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In light of the overwhelming evidence against defendant, the Court concludes that reasonable jurists would not find debatable or wrong its reasoning for concluding that defendant failed to demonstrate prejudice under the second prong of *Strickland*. *Cf. Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007) (denying COA because "the district court's assessment of [the] constitutional claim was neither wrong nor debatable" where "the guilt phase evidence against [defendant] was overwhelming"). Accordingly, the Court will deny a COA.

## III. CONCLUSION

For the foregoing reasons, the Court will deny defendant's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 154] without an evidentiary hearing and will deny a COA. An appropriate Order will accompany this Memorandum Opinion.

September 30, 2016

                                   /s/ Thomas F. Hogan
                                   Thomas F. Hogan
                                   Senior United States District Judge